ANCO INVESTMENT CORPORATION, Plaintiff-Appellee, *v.* JOSEPH SPENCER, Defendant-Appellant.
(No. 54826; )
First District—August 20, 1971.
*Rehearing denied September 30, 1971.*

Ron Fritsch, of Chicago, for appellant.

Mr. JUSTICE DRUCKER delivered the opinion of the court:

Defendant appeals from a judgment of confession entered against him on May 28, 1969, and from an order entered on December 22, 1969, confirming the judgment in the amount of $364. On appeal defendant contends that the contract upon which Anco Investment Corporation (hereafter "Anco") bases its claim is illegal since it fails to comply with the provisions of the Retail Installment Sales Act (hereafter "Act"). Ill. Rev. Stat. 1965, ch. 121½, pars. 223 through 253.

■■ Although Anco has filed no appearance or brief, we shall still review the merits of this appeal rather than enter summary reversal. *Daley v. Jack's Tivoli Liquor Lounge, Inc.*, 118 Ill.App.2d 264.

No verbatim report of proceedings has been filed. However, a proposed report of proceedings was submitted by defendant and was approved by the trial judge. (Ill. Rev. Stat. 1967, ch. 110A, par. 323(c).) It shows that Anco called defendant as an adverse witness under section 60. Defendant testified that on October 11, 1967, Anco and he entered into an agreement (1) to cancel their previous contractual relationship which concerned an automobile which he bought from Gateway Motor Mart (hereafter "Gateway") and which was financed by Anco; (2) to release defendant from his debt to Anco then in the amount of $400; (3) to give Anco possession of the previously purchased automobile; and (4) to purchase a 1960 Cadillac from Gateway, the purchase to be financed by Anco.

Defendant also testified that the $1,500 principal amount of the instrument included the price of the 1960 Cadillac, finance charges and the $400 that he previously owed to Anco; the 1960 Cadillac was presently located at 4607 South Prairie Avenue, Chicago; and that he had asked Anco to come and pick up the automobile.

The manager of Anco testified that defendant paid $790 on the principal amount of $1,500 due Anco; that to his knowledge defendant purchased the 1960 Cadillac for his own use and not for resale or use in any business; and that title to the car remained with Anco.

Defendant testified in his own behalf. He stated that he purchased the 1960 Cadillac for his own use; that Anco still held title to the car; and that Anco could repossess the automobile at any time.

The trial court found that defendant owed Anco $310 plus attorneys' fees and confirmed judgment for $364.

Defendant contends that the contract upon which Anco bases its claim is illegal since it fails to comply with sections 2 and 3 of the Act. (Ill. Rev. Stat. 1965, ch. 121½, pars. 244 and 255.) The contract entered into on October 7, 1967, between Anco, Gateway and defendant is a retail installment contract within the meaning of Section 1.[1] The 1960 Cadillac

---

[1] "Retail installment contract" or "contract" means and includes any agreement, negotiated or entered into in this state, including a chattel mortgage, conditional sale contract, or any other form of instrument evidencing an agreement to purchase goods for delivery to a person residing in the State of Illinois, other than for a commercial or business use or for the purpose of resale, by payment of the purchase price in two or more installments over a period of time and pursuant to which title to, or a lien upon the goods, which are the subject matter of the sale, is retained or taken by the seller as security, in whole or in part, for the buyers obligation. (Ill. Rev. Stat. 1965, ch. 121½, par. 223.)

falls within the definition of "goods" because it is "tangible personal property"; defendant is a "retail buyer" because he is a "person who buys goods from a retail seller in a retail installment sale"; Gateway is a "retail seller" because it "sells goods to a retail buyer"; the transaction is a "retail installment sale" because it is a "sale, other than for a commercial or business use or for the purpose of resale of goods by a retail seller to a retail buyer for a time sale price payable in two or more installments"; and the "time sale price" is the "cash sale prices of the goods and the amount, if any, included for insurance and other benefits, official fees and finance charges."

Section 2 of the Act lists the general requirements for retail installment contracts as:

"The contract shall contain, printed or written in a size equal to at least ten-point bold type the following:

(a) Both at the top of the contract and directly above the space reserved for the signature of the buyer, the words 'RETAIL INSTALL-MENT CONTRACT'; and

(b) the following notice: 'NOTICE TO THE BUYER: 1. Do not sign this contract before you read it or if it contains any blank space. 2. You are entitled to a completely filled in copy of this contract when you sign it. 3. Under the law, you have the following rights, among other: (a) To pay off in advance the full amount due and to obtain a partial refund of the finance charge; (b) Under certain conditions, to redeem the property if repossessed for a default.'

The contract shall contain the names of the seller, the buyer, the place of business of the seller, the residence or place of business of the buyer as specified by the buyer and a description of the goods including its make, model and identification number or marks, if any."

In the instant case, however, (1) the contract was not signed by the seller; (2) the words "RETAIL INSTALLMENT CONTRACT" did not appear at the top of the contract and directly above the space reserved for the signature of the buyer; (3) "NOTICE TO THE BUYER" did not appear; and (4) the contract did not contain Gateway's place of business nor a description of the goods.

The contract signed by defendant also fails to meet any of the specific requirements of retail installment contracts set forth at Section 3 which provides:

"Every contract shall contain the following items:

(a) The cash sale price of the goods which are the subject matter of the retail installment sale;

(b) The amount of the buyer's down payment, itemizing the

amounts paid in money and in goods and containing a brief description of the goods, if any, traded-in;

(c) The difference between items (a) and (b);

(d) The amounts, if any, charged for insurance and other benefits, specifying the coverages and benefits;

(e) The amount of official fees, as defined in section one.

(f) The principal balance, which is the sum of items (c), (d) and (e);

(g) The amount of the finance charge;

\* \* \*

(h) The time balance, which is the sum of items (f) and (g), payable in installments by the buyer to the seller, the number of installments required, the amount of each installment expressed in dollars and cents and the due date or period thereof;

(i) The time sale price."

■■ Defendant argues that since the contract fails to comply with the requirements of sections 2 and 3 it is an illegal contract and cannot be enforced against him. Defendant relies on *DeKam v. City of Streator*, 316 Ill. 123, 129, wherein the court stated: "A contract expressly prohibited by a valid statute is void. This proposition has no exception, for the law can not at the same time prohibit a contract and enforce it. The prohibition of the legislature cannot be disregarded by the courts."

However, in drafting the Act our legislature did not prohibit contracts for retail sales. It specified the formalities and protective safeguards of these contracts and provided penalties for failure to comply. This is evidenced by section 20 (Ill. Rev. Stat. 1965, ch. 121½, par. 243) which after setting out the criminal penalty provides: "Notwithstanding the provisions of this section, the failure to comply with any provisions of this Act may be corrected by the seller at any time after the execution of the retail installment contract or in any event not later than 10 days after the seller is notified thereof in writing by the buyer, and, if so corrected, neither the seller, nor the holder is subject to any criminal penalty under this or any other section of this Act."

Another indication of the legislature's intent is found in section 17 (Ill. Rev. Stat. 1965, ch. 121½, par. 240) wherein two civil penalties are provided for: "In case of failure of the seller or holder to comply with the provisions of this Act, the buyer has the right to recover from the seller or holder, as the case may be, an amount equal to the finance charge of 10% of the cash price if no finance charge is specified in the contract or supplementary statement, whichever is the greater, plus reasonable attorneys' fees."

In *Grody v. Scalone*, 408 Ill. 61, 64, the court stated: "The question

presented to us is to determine the intent of the legislature as to whether or not it intended, in addition to subjecting the plaintiff here to an expressed penalty, to impose the additional and greater penalty of refusing him any relief on his contract entered into without compliance with the statute. In cases of this character, whatever decisions to the contrary may be found, there is no inflexible rule of arbitrary application for the determination of the effect by implication of the prohibitory statute. The question presented is one of legislative intent to be gathered from the language of the statute read in the light of the circumstances with which it deals, with such considerations of public policy as may be involved in the conflicting claims of construction. Whatever may be the structure of the statute in respect to prohibition and penalty, or penalty alone, it does not seem reasonable, under conditions where a person has furnished material and labor on a just basis, without fraud on his part, that it be taken for granted that the legislature meant the contract entered into for such purpose is to be held void in the sense it cannot be enforced in a court of justice." See also *Meyer v. Buckman*, 7 Ill.App.2d 385.

■■ We believe that since the statute regulating installment sales gives exclusive remedies to the buyer, the buyer is limited to these remedies and cannot raise the defense of illegality as a total bar to recovery by the seller.

■■ Defendant further claims that where the specific items required by section 3 are not found in the contract, a court cannot fix either the finance charge or the cash price, and therefore the remedies provided by section 17 are of no use. However, we believe that determining the cash price or finance charge is a matter of proof which the trial court can ascertain after evidence is proffered by the parties. By discovery proceedings of Gateway's and Anco's books and records, defendant should be able to ascertain the cash price or finance charge for the 1960 Cadillac.

We note that sections 1 through 29 of the Retail Installment Sales Act, 1965, ch. 121½, were repealed pursuant to legislative enactment as of July 26, 1967. Section 17 of the former Act has not been incorporated in the new Retail Installment Sales Act effective January 1, 1968. (Ill. Rev. Stat. 1969, ch. 121½, par. 501-533.) However, the penalty section of the new Installment Act, section 31, (Ill. Rev. Stat. 1969, ch. 121½, par. 531) provides for both civil and criminal penalties:

"(a) Any person who knowingly violates this Act is guilty of a misdemeanor and upon conviction shall be punished by a fine of not more than $1,000 or by imprisonment for not more than 12 months in a penal institution other than the penitentiary, or both.

(b) No person who violates this Act, except as a result of an acci-

dent or bona fide error of computation, may recover any finance charge, any delinquency or collection charge or any refinance charge in connection with the related retail installment contract or retail charge agreement."

We also note that if the contract in the instant case had been entered into after January 1, 1968, it would not be regulated by the new Installment Act, but would rather come within the purview of the Motor Vehicle Retail Installment Sales Act effective January 1, 1968. (Ill. Rev. Stat. 1969, ch. 121½, pars. 561-586.) Section 24(a) and (b), Penalties, (Ill. Rev. Stat. 1969, ch. 121½, par. 584), provides:

"(a) Any person who knowingly violates this Act is guilty of a misdemeanor and upon conviction shall be punished by a fine of not more than $1,000 or by imprisonment for not more than 12 months in a penal institution other than the penitentiary or both.

(b) No person who violates this Act, except as a result of an accident or bona fide error of computation, may recover any finance charge, any delinquency or collection charge or any refinance charge in connection with the related retail installment contract."

The judgment is reversed and remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded with directions.

ENGLISH, P. J., and LORENZ, J., concur.