MICRO SWITCH EMPLOYEES' CREDIT UNION, Plaintiff-Appellee, v. TROY COLLIER, Defendant-Appellant.

Second District   No. 2—88—0073

Opinion filed November 1, 1988.

Robert E. Luedke, of Williams & McCarthy, P.C., of Rockford (Michael K. Havrilesko, of counsel), for appellant.

Beckmire, Garrity & Vogt, of Freeport (John G. Garrity, of counsel), for appellee.

JUSTICE DUNN delivered the opinion of the court:

In 1985, the plaintiff, Micro Switch Employees' Credit Union, loaned the defendant, Troy Collier, $7,300 to purchase a car from a car dealer in Wisconsin. When defendant fell in arrears by over $800 in 1987, plaintiff repossessed defendant's car and filed suit for certificate of title and judgment on the amount owed on the loan. Defendant filed a counterclaim for wrongful repossession. Defendant appeals from an order of the circuit court of Stephenson County that granted judgment to the plaintiff for $7,848.32 and ordered the plaintiff to sell the car, with the proceeds to apply to the judgment.

On appeal, defendant contends the trial judge erred in holding the Motor Vehicle Retail Installment Sales Act (Ill. Rev. Stat. 1985, ch. 121½, par. 561 et seq.) inapplicable to the transaction. Also, the defendant contends that plaintiff waived its right to repossess defendant's car before giving notice when it accepted late payments. For the reasons set forth below, we affirm.

Under the loan agreement, defendant was required to make weekly payments of $44, maintain insurance on the car, and put the car up as collateral. The agreement stated that defendant would be in default if he failed to make a minimum payment when due or if he failed to maintain car insurance. Further, the agreement provided that plaintiff could repossess the collateral upon default without judicial process or giving notice, and that plaintiff could delay enforcing its rights without losing them.

At first, defendant's loan payments were deducted from his salary from Micro Switch. However, in April 1985, defendant was laid off, and at the time of repossession in February 1987, defendant was over $800 in arrears. Defendant's loan officer, Jo Ellen Turner, testified that she worked with the defendant to bring his payments up to date and told defendant several times that his car would be repossessed if he did not make up his missed payments.

When plaintiff repossessed defendant's car in February 1987, defendant was sent two forms: "Notice of Intent to the Debtor" and "Affidavit of Defense to the Creditor" as required by State of Illinois, Rules and Regulations for repossession of vehicles by lienholders and creditors (10 Ill. Reg. 4245 (adopted Feb. 26, 1986)). The notice informed defendant that plaintiff intended to apply to the Secretary of State for a certificate of title and advised defendant that if he returned the affidavit of defense form, plaintiff would be stopped from getting a certificate of title until it obtained a court order. Defendant sent back the affidavit of defense, and plaintiff filed this suit. The trial judge found for plaintiff on the amount owed on the loan, $4,890.50, plus attorney fees, and granted plaintiff certificate of title, ordering plaintiff to sell the car.

■ On appeal, defendant contends that his loan is covered by the Motor Vehicle Retail Installment Sales Act (the Act) (Ill. Rev. Stat. 1985, ch. 121½, par. 561 *et seq.*). Under the Act, defendant, having paid more than 30% of the loan, would have been entitled to written notice of his right to cure default. The Act, however, does not apply to this transaction. The Act covers purchasers of automobiles who buy from dealers under a retail installment transaction. The Act defines a retail installment transaction as follows:

" 'Retail installment transaction' means a credit sale of a motor vehicle by a retail seller to a retail buyer for a deferred payment price payable in one or more installments." Ill. Rev. Stat. 1985, ch. 121½, par. 562.4.

Retail buyer and retail seller are defined as follows:

" 'Retail buyer' or 'buyer' means a person who buys a motor vehicle from a retail seller, primarily for personal, family, household or agricultural purposes in a retail installment transaction ***." Ill. Rev. Stat. 1985, ch. 121½, par. 562.2.

" 'Retail seller' or 'seller' means a person engaged in the business of selling motor vehicles to retail buyers in retail installment transactions." Ill. Rev. Stat. 1985, ch. 121½, par. 562.3.

In this case, the buyer and seller did not contract for a retail in-

stallment transaction. Defendant paid the retail seller the total amount due in one check. Defendant asserts that the Act should apply here because he obtained the money for the purchase by an installment loan with the plaintiff.

This Act does include within its scope holders of retail installment transactions or sales finance agencies. Micro Switch, however, was not acting as a sales finance agency. A sales finance agency is defined as follows:

> " 'Sales finance agency' means a person engaged, in this State, in whole or in part, in the business of purchasing or making loans upon the security of retail installment contracts. The term includes, but is not limited to, banks, trust companies, private bankers and industrial bankers authorized to do business and to accept deposits in this State, if so engaged." Ill. Rev. Stat. 1985, ch. 121½, par. 562.11.

In this case, the plaintiff was not acting as a sales finance agency. It did not purchase a retail installment contract from the seller, nor did it make a loan based upon the security of a retail installment contract. Rather, plaintiff created its own installment loan with the car as collateral.

■■ Defendant contends that the Act should apply to this situation because the Act's purpose was "to protect the buyer from the myriad of oppressive practices which, under the best of circumstances, seems to characterize installment selling." (*Chrysler Credit Corp. v. Ross* (1975), 28 Ill. App. 3d 165, 169, 328 N.E.2d 65.) While the purpose of the Act may seem to warrant including agencies like Micro Switch which make installment loans for car purchases, it is clear that the legislature has chosen to include only retail sellers and sales finance agencies. The language of the statute is clear and precise. Had the legislature intended to include lenders such as the plaintiff, it would have done so. Where the language of the Act is certain and unambiguous, the only legitimate function of the courts is to enforce the law as enacted by the legislature. *Certain Taxpayers v. Sheahen* (1970), 45 Ill. 2d 75, 256 N.E.2d 758.

Defendant cites for the first time in his reply brief *Anco Investment Corp. v. Spencer* (1971), 1 Ill. App. 3d 445, 275 N.E.2d 263, in support of his contention that the Act applies to this transaction. We are not persuaded by this case, as it does not involve application of the Motor Vehicle Retail Installment Sales Act, but rather the Retail Installment Sales Act, that was repealed and revised in 1967 (Ill. Rev. Stat. 1965, ch. 121½, par. 223 *et seq.* (repealed by 1967 Ill. Laws 2149, eff. January 1, 1968; revised in Ill. Rev. Stat. 1967, ch. 121½,

par. 501 *et seq.*)).

We agree with the analysis of the Court of Appeals for the Seventh Circuit, which has held that the Act does not apply to bank loans. (*Basham v. Finance America Corp.* (7th Cir. 1978), 583 F.2d 918.) *Basham* was a consolidation of 19 truth-in-lending actions. As to one of the consolidated cases, the court held that plaintiff's claim that the Act applied to a bank that made a loan was without merit. The court reasoned:

> "The statute is designed to apply where a retail automobile sales establishment provides or procures financing for the vehicles it sells, not where independent bank financing is obtained \*\*\*. This section clearly contemplates the situation where the automobile dealer, the 'seller,' arranges the financing and is therefore not applicable to the bank in this case." *Basham*, 583 F.2d 918 at 928-29.

Defendant's second contention is that plaintiff was not entitled to repossess defendant's car because plaintiff waived its right to strict compliance by accepting late payments. "The law in Illinois is clear that a vendor may not establish a pattern of accepting time payments which may be slightly late and then suddenly insist on a strict compliance of the time provisions of the contract and declare a forfeiture of the merchandise." *Margolin v. Franklin* (1971), 132 Ill. App. 2d 527, 530, 270 N.E.2d 140.

■ The general rule is clearly inapplicable to this case, where the trial judge found that 17 or more payments had not been paid or not paid in full, totaling $800 in arrears. In *Margolin*, there was no evidence of missed payments. Rather, the payments were made late under a disagreement about when they were due. Here, defendant's loan officer testified that she told defendant numerous times that he must make his back payments or the car would be repossessed. This is not a case where the debtor went unwarned about his late payments. Moreover, this is a case of numerous missed payments.

■ Defendant also contends that as a member of the credit union, he was entitled to be treated according to the policy guidelines of the credit union and that he was not treated according to those guidelines. Defendant's argument is groundless. The guidelines defendant points to list seven steps loan officers should follow to collect on loans. Defendant argues that the steps must be followed in order. However, the guidelines clearly state that the procedures may be used in any order that will be effective. Moreover, nothing in the contract for this transaction refers to a right to be treated according to these procedures.

Defendant next contends that the trial court erred in denying his counterclaim for wrongful repossession. For the reasons stated above, it is clear that the trial judge acted properly.

■ Finally, we find no merit in defendant's contention that it was error for the trial judge to enter a judgment for the amount owed on the loan and order defendant to pay any deficiency that resulted after plaintiff sold the car. The order by the trial judge was proper under section 9—504 of the Uniform Commercial Code—Secured Transactions, which entitles the secured party to reimbursement from the debtor for any deficiency. (Ill. Rev. Stat. 1985, ch. 26, par. 9—504.) The defendant asserts that this order will allow the plaintiff to hold an unreasonable sale and make the defendant pay for the deficiency. Defendant offers no evidence to support this accusation. Nonetheless, if the defendant has an objection to the sale, his proper course of action is to petition the court at that time for a determination on the sale pursuant to section 9—507 of the Uniform Commercial Code—Secured Transactions (Ill. Rev. Stat. 1985, ch. 26, par. 9—507).

The judgment of the circuit court of Stephenson County is affirmed.

Affirmed.

REINHARD and INGLIS, JJ., concur.