LAKE COUNTY BOARD OF REVIEW, Plaintiff-Appellant, v. THE PROPERTY TAX APPEAL BOARD *et al.*, Defendants-Appellees (Deerfield School District 109 *et al.*, Intervenors).

Second District No. 2—89—0334

Opinion filed December 28, 1989.

Fred L. Foreman, State's Attorney, of Waukegan (Helen S. Rozenberg and Ernest Y. Ling, Assistant State's Attorneys, of counsel), for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Jennifer A. Keller, Assistant Attorney General, of Chicago, of counsel), for appellee Property Tax Appeal Board.

Robert J. Masini, of Diver, Bollman, Grach & Quade, of Waukegan, for appellee Briarwood Country Club.

Jeffrey B. Wise and Linda E. Spring, both of Wildman, Harrold, Allen & Dixon, of Waukegan, and James T. Magee & Associates, of Round Lake (Paul S. Chervin and James T. Magee, of counsel), for appellee Heatherridge Development Company.

James T. Magee & Associates, of Round Lake (James T. Magee, of counsel), for other appellees.

PRESIDING JUSTICE UNVERZAGT delivered the opinion of the court:

This appeal arises from an administrative review proceeding. The six defendant golf courses filed applications with the Lake County supervisor of assessments for open-space valuation pursuant to section 20g—1 of the Revenue Act of 1939, as amended (Ill. Rev. Stat. 1987, ch. 120, par. 501g—1) for the 1986 tax year. The supervisor of assessments concluded that as of January 1, 1986, the open-space fair cash value of the subject golf courses was $6,000 per acre. This becomes an assessed valuation of $2,000 per acre.

The golf courses then filed assessed valuation complaints with the Lake County Board of Review (Board of Review) alleging that the appropriate fair cash value per acre was $1,500, which becomes an assessed valuation of $500 per acre. The Board of Review rejected the proposed $500-per-acre assessed valuation and concurred with the values set by the supervisor of assessments, thus affirming the open-space assessed value of $2,000 per acre.

Each of the golf courses then filed an appeal with the Property Tax Appeal Board (PTAB), which conducted an evidentiary hearing on the six consolidated appeals. The PTAB reversed the decision of the Board of Review and found the open-space assessed value of the golf courses was $500 per acre.

The Board of Review filed its complaint for administrative review seeking reversal of the PTAB's open-space valuation. Eleven school districts were allowed to intervene on behalf of the Board of Review.

During the course of administrative review, the circuit court remanded the cause back to the PTAB for clarification of an apparent conflict between its open-space valuation methodology in the instant cause (sales of "wetlands and marshes in Lake County offer a better indication of open space value as described in *** Section 20g—1 of the Revenue Act of 1939") and a prior open-space valuation of Glen Flora County Club (PTAB Docket No. 84—2329—C—1) ("Ideally, the best comparable sales to use in determining the fair cash value of the subject [property] would be recent open space purchases of properties most similar to the subject, such as golf courses"). The PTAB reaffirmed its decision in the instant cause, noting its reasoning in the Glen Flora County Club case "may have been flawed." The circuit court subsequently issued its order finding the PTAB decision not to be against the manifest weight of the evidence and finding that the

PTAB had correctly interpreted section 20g—1 as mandating a uniform valuation of open space, regardless of its actual use.

Accordingly, judgment was granted for the golf courses against the Board of Review and the intervening school districts. The Board of Review timely filed its notice of appeal, and judgment was stayed pending appeal. The intervening school districts' appeal was dismissed by this court as untimely.

The Board of Review raises these issues: (1) whether the standard of review of the PTAB's valuation of the subject properties is deferential or independent; (2) whether section 20g—1 of the Revenue Act of 1939 mandates the assessment of qualified open-space property based on the property's actual use; and (3) whether the PTAB'S interpretation of section 20g—1 violates the uniformity of taxation clause of the Illinois Constitution.

The evidence upon which the PTAB based its open-space valuation of the subject golf courses is essentially condensed as follows.

The golf courses submitted an appraisal report prepared for purposes of the hearing by William D. New and William L. Rehm of the Lake County Appraisal Service. New and Rehm estimated the open-space value of the courses to be $1,500 per acre, for an open-space assessed value of $500 per acre. New testified at the hearing as to the methodology employed in arriving at the open-space value of the courses.

He examined sales of seven parcels of property that he believed would satisfy the definition of open-space property. The first parcel was a 37.29-acre site located on the west side of the Des Plaines River in the floodplain. The parcel, which adjoined other forest preserve property used as a nature reservation, was purchased by the Lake County forest preserve district for $1,935 per acre.

The second parcel of 43.8 acres was located north of Rollins Road on the south side of Fourth Lake. Like the first parcel, it consisted largely of floodplain; a creek runs through the land. It sold to David P. Raymond for $1,027 per acre.

The third parcel of property was an estimated 13-acre peninsula in Channel Lake which was originally intended for park use. The peninsula was largely floodplain and under water. It was sold by Lake County, as trustee, to Alfonse and Gudrun Gnilka for $385 per acre.

The fourth parcel was a two-acre site on Crabapple Island in the Chain of Lakes. It was acquired by the General Robert E. Wood Memorial Nature Preserve for use as a nature preserve at a price of $330 per acre. The land was swampy and located in the floodplain. Although the size of the parcel would disqualify it from classification as

open-space property, New felt its sale was relevant because the property was put to an open-space use.

The fifth parcel consisted of 40 acres. It was located on Grand Avenue in Fox Lake. Although the property consists largely of floodplain, the purchaser, Old Orchard Bank & Trust Company under trust No. 86—26, was developing a commercial marina on the Grand Avenue frontage. The property sold for $2,700 per acre. The high per-acre value of the property was attributed to this commercial influence.

The sixth parcel was located in Antioch, Illinois, on the Illinois-Wisconsin border. It consisted of 39.74 acres and sold for $1,439 per acre to Kenneth and Mary Ann Chimielewski. It was located for the most part in the floodplain and is used as a Christmas tree farm.

The seventh parcel was an 11.77-acre site east of Sunset Avenue in Antioch. The property was lowland situated in the floodplain, largely was swamp and adjoined a Channel Lake. It sold for $2,209 per acre to William and Kimberly Chase.

The average price of the seven properties was $1,432 per acre. New accorded the greatest weight to the sales of the first two parcels because he considered them to be prime examples of open-space land and they were recent sales. He gave the least consideration to the sale of the fifth parcel because its value reflected the commercial development on the property.

In addition to considering the above sales, New also considered the assessed value of various parcels of property used for open-space purposes in 11 townships. The average market value of the properties was $1,564 per acre, with an average assessed value of $521 per acre.

Based upon the sales and assessment data collected and studied, New arrived at an estimated fair cash value for typical open-space property in Lake County of $1,500 per acre. On the basis of the estimated fair cash value, New determined the appropriate assessed value of the typical open-space property in Lake County to be $500 per acre. In arriving at these figures, New considered no agricultural or residential properties, nor did he consider commercial sales of developmental property.

In addition to New and Rehm's appraisal and New's testimony, the golf courses also introduced into evidence an appraisal of open-space properties in Lake County for 1984 and 1985 prepared by John A. Magee of John A. Magee & Associates. Magee did not testify at the hearing, however. Magee's appraisal concluded the express language of section 20g—1 requires that open-space property must have the same value, regardless of the use to which it is actually put.

Based on the data he collected, which was more extensive but not as detailed as that of New and Rehm, he determined the fair cash value of open-space property in Lake County was $1,500 per acre. He also determined the assessed value of open-space property in Lake County was $500 per acre.

The following evidence was adduced by the Board of Review. Wayne Wasylko, a supervisor in the tax extension and redemption division of the Lake County clerk's office, explained how the division purchases land parcels in tax sales, offers them for sale and sells them in a sealed bidding process.

Gordon Washburn, the Warren Township assessor, testified next on behalf of the Board of Review concerning the sample assessment for lake-bottom property in Warren Township contained in New's appraisal report. Washburn stated that lake-bottom property is valued minimally on the basis of its worth to the owner. Washburn also testified that he categorizes property for purposes of assessment and that one such category includes wetlands and marshes which are assessed at one-sixth of their market value. He assesses golf courses differently and more significantly than wetlands and marshes. With respect to Heatherridge Development Corporation located in Warren Township, Washburn explained that the Board of Review's determination of the open-space value of the property ($143,400) as reflected on the PTAB form was greater than the assessor's determination of the fair market value of the property ($50,191). Normally, he stated, market value is higher than open-space value.

The Board of Review's next witness was Kenneth Larson, the Lake County supervisor of assessments and the clerk of the Lake County Board of Review. Larson testified in clarification of Washburn's testimony that the assessed fair market value of Heatherridge Development Corporation reflected on the PTAB form was incorrect. He explained that the correct assessed market value for the property was $185,052.

Larson testified that in determining the fair cash value for open-space property, he referenced a document designated "1985-1986 Lake County Open Space Sales (10 acres and over)," which the Board of Review introduced into evidence. The document was prepared by the township assessors and their association. The assessors collected data from 37 sales in nine townships. The parcels sold ranged in size from 10 to 621 acres. Their fair market value ranged from $2,180 per acre to $209,486 per acre, and the median sale price of the properties was $11,220 per acre. Twenty-six of the properties were zoned agricultural. One property was zoned agricultural and residential, and one

was zoned agricultural and industrial. Six of the properties were zoned residential. One was zoned business and residential and one was zoned commercial. (The zoning designation of one property was not indicated on the document.) Eight of the properties were purchased for purposes of development. The agricultural and residential properties had a median market price per acre of $10,942; properties zoned strictly agricultural had a median market price of $8,741 per acre; the properties purchased for development sold for a median market price of $25,879 per acre.

Larson testified he relied fairly heavily on a section of the referenced document which was a list designated "Open Space Sales." The list was compiled by his office. It showed 10 properties sold between June 1984 and December 1986, their acreage, their sales price, and their price per acre. The parcels ranged in size from 26.5 acres to 621 acres and their sales prices per acre ranged from $1,500 to $15,343. The median price per acre was in the range of $6,000. Larson assigned this figure as the market value of open-space property. Except for two golf course properties included on the list, Larson did not know the uses to which any of these properties were put either before or after their sale.

The second and third sales shown on the list were the golf course properties. One of the courses, Brae Loch Country Club, sold for $7,929 per acre and the other, Midlane Country Club, sold for $7,358 per acre. These prices included the cost of clubhouses and other physical structures on the courses. Brae Loch had a restaurant/lounge, maintenance buildings, and tennis courts. Midlane had a clubhouse and a swimming pool. To Larson's knowledge, neither of these golf courses had sought or was classified as open-space property.

In reaching the fair cash value figure of $6,000 per acre, Larson relied "fairly heavily on the fact that [there were] two golf course sales in that grouping." Larson testified frankly that his conclusion as to the market and assessed values of the open-space properties "was based mainly on the one study with the two country clubs in it."

Larson also considered a section of the document which was titled "1984-1985-1986 Land Sales of Over 50 Acres Parcels." This document contained a list of 24 50-acre properties. Eight of the properties were improved. The median price of all the properties, less the value of the buildings on the improved properties, was between $8,017 and $8,643 per acre. The median price of the vacant properties was between $10,499 and $10,843. Larson did not know if any of the over-50-acre parcels had sought or would qualify for open-space classification. He knew that some of these properties, but not specifically

which ones, were used for development after their sale.

Finally, the document referenced by Larson also contained a newspaper account of the purchase of a parcel of property by the Libertyville Township Open Space Board for open-space purposes. The article stated that the 115-acre parcel was purchased for $920,000 or $8,000 per acre. Had the district not acquired this property, it would have been developed.

The Board of Review next introduced into evidence a document titled "1986 Open Space Sales." The parcels ranged from five acres to 59.646 acres and all were purchased by the Libertyville Township open-space district at a per-acre price which ranged from $8,000 to $25,000. Two five-acre parcels had residences on them, some of the parcels were farmland, some were farmland with buildings, and some were vacant. Larson made no adjustment in the prices of these properties to reflect the structures on them. Two of the parcels were assessed under the Farm Act. Larson did not know if the statute pursuant to which the Libertyville Township open-space district acquired these properties was in any manner similar to the open-space provisions contained in the Revenue Act of 1939.

Larson testified that other than golf courses, the only properties in Lake County which have sought open-space classification were a park and a recreational center. Larson commented on the second property contained in New and Rehm's appraisal, which was the 43.8-acre site consisting largely of floodplain and having a creek running through it. Larson testified that under his calculation of the open-space value of land in Lake County, that property "would have had a value less than the value for open space that we would have assigned, so [the open-space value] would not have been assigned to it." He further stated that wetland, marshland, and other similar properties would not benefit from open-space classification.

With respect to his obligations under the statute, Larson explained that he was required to arrive at one value for all open-space property. He further explained that once he determines an open-space value, he values all qualified properties at that rate. He departs from this practice only when application of the open-space value would adversely affect the property owner, as in the case of wetlands or marshes.

In determining the open-space assessed value of the golf course properties to be $500 per acre, the PTAB found the evidence submitted by the golf courses of sales of wetlands and marshes in Lake County offered "a better indication of open space value as described in Section [20g—1] of the Revenue Act of 1939" than the evidence

presented by the Board of Review. With respect to the evidence presented by the Board of Review, the PTAB found that (1) "[the Board of Review] did not provide any evidence of which properties if any were bought for open space use"; (2) "some of the properties were improved and some were purchased for future development"; (3) "[t]he Board [of Review]'s witnesses did not identify any comparable as having an open space use when purchased or at the present time"; (4) "even though two golf course sales were included, they indicated the value of the properties as improved golf courses not open space"; (5) "[t]he properties sold to the Libertyville Township Open Space Board were acquired by a unit of government with condemnation powers" and, therefore, the purchase price should be based on "the fair market value when the properties are at their highest and best use," and (6) "the supervisor's testimony did not provide any evidence of open space value."

As noted, the circuit court affirmed the determination of the PTAB, finding that the conclusions reached by it were "not against the manifest weight of the evidence and should be affirmed."

■ The Board of Review's first argument concerns the proper standard of review which this court must apply. It acknowledges the axiom that an agency's findings concerning questions of fact are *prima facie* true and correct (Ill. Rev. Stat. 1987, ch. 110, par. 3—110) and should not be disturbed on review unless they are contrary to the manifest weight of the evidence, that is, unless an opposite conclusion is clearly evident (*Gas Research Institute v. Department of Revenue* (1987), 154 Ill. App. 3d 430; *Burke v. Board of Review* (1985), 132 Ill. App. 3d 1094). It further notes the rule that a reviewing court is not bound by an agency's determination on matters of law. *Kensington Steel Corp. v. Industrial Comm'n* (1944), 385 Ill. 504, 509.

The Board of Review contends the facts in the instant cause are not in dispute but, rather, it is the legal effect of the facts which is at issue. That is, the Board of Review found the proper section 20g—1 method for valuing golf courses was by reference to the value of golf courses, whereas the PTAB found the proper valuation methodology was by reference to the value of wetlands and marshes. The Board of Review concludes that inasmuch as the sole issue is the proper application of section 20g—1 of the Revenue Act to the undisputed facts of the case, this court may determine the correctness of the agency's ruling independently of the trial court's judgment, since the scope of review of the appellate court on questions of law is independent of, not deferential to, the decision of the trial court. (*Ranquist v. Stack-*

*ler* (1977), 55 Ill. App. 3d 545.) In further support of its contention as to the proper standard of review, the Board of Review was granted leave to cite as additional authority *Kankakee County Board of Review v. Property Tax Appeal Board* (1989), 131 Ill. 2d 1.

In *Kankakee*, the supreme court determined the usual standard of review of an administrative decision ("contrary to the manifest weight of the evidence") did not apply where the case involved an improper method of valuation rather than simply a difference of opinion as to the market value of the property. (*Kankakee County Board of Review*, 131 Ill. 2d at 14; accord *Chrysler Corp. v. Illinois Property Tax Appeal Board* (1979), 69 Ill. App. 3d 207, 211.) Accordingly, the supreme court held it had to determine whether the PTAB erred as a matter of law.

We agree with the Board of Review that the instant cause presents a question of law. It is clear the PTAB as an administrative agency has the authority to construe statutory provisions in making decisions and determinations (*Hall v. Illinois Property Tax Appeal Board* (1981), 98 Ill. App. 3d 824, 827), and it is evident the parties treated the issue as one of law below. The golf courses submitted a brief along with their valuation evidence, and the PTAB's written decision recites: "The market value of the land and improvements was not contested. At issue is the methodology to be used in determining the open space value of the land."

Notwithstanding the above, the PTAB points out, correctly so, that it is well established that courts will give substantial weight and deference to the interpretation of a statute by the agency charged with its administration and enforcement. (*Airey v. Department of Revenue* (1987), 116 Ill. 2d 528, 536; *Kennedy Brothers, Inc. v. Property Tax Appeal Board* (1987), 158 Ill. App. 3d 154, 159.) "A significant reason for this deference is that courts appreciate that agencies can make informed judgments upon the issues, based upon their experience and expertise." (*Illinois Consolidated Telephone Co. v. Illinois Commerce Comm'n* (1983), 95 Ill. 2d 142, 153.) Although a court is not formally bound by the administrative decision as to the legal effect of statutory words (*Illinois Consolidated Telephone Co.*, 95 Ill. 2d at 153; *Ranquist*, 55 Ill. App. 3d at 550) and retains its authority to construe the statute to the contrary (*P.H. Mallen Co. v. Department of Finance* (1939), 372 Ill. 598, 601) and reject it when it is erroneous (*City of Decatur v. American Federation of State, County, & Municipal Employees, Local 268* (1988), 122 Ill. 2d 353), "interpretations by administrative agencies express an informed source for ascertaining the legislative intent" (*Adams v. Jewel Cos.* (1976), 63 Ill. 2d 336,

344-45; *Katz v. City of Chicago* (1988), 177 Ill. App. 3d 305), which deserve to be afforded great weight in a court's own construction of the statute (*Ranquist*, 55 Ill. App. 3d at 550).

Affording appropriate deference to the conclusion of the PTAB and mindful that this court is similarly unrestrained by the judgment of the trial court, we proceed to consider whether the PTAB's valuation of the subject properties was in accordance with the law.

At issue is the construction of section 20g—1 of the Revenue Act of 1939, which provides in full as follows:

"Except in counties with a population of 200,000 or more which classify real property for the purpose of taxation, in addition to valuation as otherwise permitted by law, upon the filing of an application under Section 20g—2 by the person liable for the taxes on that land, land which is used for open space purposes and has been so used for the 3 years immediately preceding the year in which the assessment is made shall be valued on the basis of its fair cash value, estimated at the price it would bring at a fair, voluntary sale for use by the buyer for open space purposes.

Land is used for open space purposes within the meaning of the Section if it is more than 10 acres in area and is used actually and exclusively for maintaining or enhancing natural or scenic resources, protects air or streams or water supplies, promotes conservation of soil, wetlands, beaches, or marshes, including ground cover or planted perennial grasses, trees and shrubs and other natural perennial growth trees and shrubs, and including any body of water, whether man-made or natural, conserves landscaped areas, such as public or private golf courses, enhances the value to the public of abutting or neighboring parks, forests, wildlife preserves, nature reservations, sanctuaries, or other open spaces, or preserves historic sites. Land is not used for open space purposes within the meaning of this Section if it is used primarily for residential purposes." Ill. Rev. Stat. 1987, ch. 120, par. 501g—1.

■ Section 20g—1 is an exception to the general rule that property be valued on the basis of its fair cash value. (Ill. Rev. Stat. 1987, ch. 120, par. 501(1).) "Fair cash value is synonymous with fair market value and is defined as the price a willing buyer would pay a willing seller for the subject property, there being no collusion and neither party being under any compulsion." (*Ellsworth Grain Co. v. Illinois Property Tax Appeal Board* (1988), 172 Ill. App. 3d 552, 557, citing *Springfield Marine Bank v. Property Tax Appeal Board* (1970), 44

Ill. 2d 428.) The statute specifically excludes property used primarily for residential purposes from open-space valuation, and farmland and land suitable for developmental purposes are also not to be valued as open space. 1982 Ill. Att'y Gen. Op. 10.

The Board of Review's contention here, as it was below, is that reference to the Revenue Act as a whole, section 20g—1 in particular and the legislative history of section 20g—1 mandates that open-space properties be valued based on the fair-market value of the actual, specific use to which the qualified open-space property is devoted. In other words, wetlands, beaches and marshes, for example, should be valued on the basis of those particular open-space uses and golf courses and wildlife preserves, as other examples set forth in section 20g—1, should be valued on the basis of those particular open-space uses.

The counterargument presented by the PTAB and the defendant golf courses is that the plain language of the statute, its legislative history and recent judicial construction mandate a uniform valuation of all qualified open-space property regardless of the particular manner in which the property qualifies for open-space valuation.

Although acknowledging that section 20g—1 directs that the usual method of fair cash valuation based on the highest and best use of the property not be employed in determining the assessed value of properties devoted to one of the six open-space purposes enumerated therein, the Board of Review nonetheless asserts the intention of the legislature ascertained from the plain language of the statute is that property devoted to a designated open-space purpose is to be assessed based on its market value for its current use, that is, in terms of the instant cause, the current use of the property as a golf course. As such, it contends the PTAB erred in valuing the subject properties without regard to their actual present use as golf courses. Even conceding for purposes of argument that a uniform valuation of open-space property was intended, the Board of Review contends the PTAB's valuation of the subject properties contravened the express language of section 20g—1 because it was arrived at by reference only to the "least valuable" open-space uses (wetlands and marshes) rather than all of the six enumerated open-space uses.

■ The primary rule of statutory interpretation and construction is to ascertain and effectuate the true intent and meaning of the legislature. (*Rockford Memorial Hospital v. Schueler* (1988), 167 Ill. App. 3d 358; *Trigg v. Sanders* (1987), 162 Ill. App. 3d 719, 726.) Where a statute has not been judicially interpreted, the court is guided both by the plain meaning of the statute's language and the legislative intent

behind it. (*Krall v. Secretary of State* (1988), 168 Ill. App. 3d 478, 483; *Rockford Memorial Hospital*, 167 Ill. App. 3d at 361.) Where a statute has been judicially interpreted, however, considerations of *stare decisis* weigh heavily inasmuch as the legislature is free to change court interpretations of its legislation. *Rodgers v. Consolidated R.R. Corp.* (1985), 136 Ill. App. 3d 191, 195.

As brought to our attention by the PTAB and the golf courses, section 20g—1 recently has been construed in the Appellate Court for the Third District to require a golf course to be assessed on the basis of its use for open-space purposes as opposed to its use as a golf course. In *Knox County Board of Review v. Illinois Property Tax Appeal Board* (1989), 185 Ill. App. 3d 530, *appeal denied* (1989), 127 Ill. 2d 618, the taxpayer owned a 77.5-acre tract of land comprised of a 1-acre homesite and a 9-hole golf course on the remaining 76.5 acres. His 1985 assessed valuation of $52,380 reflected a per-acre value of $368.40 and a per-hole value of $8,520. He applied to the Knox County Board of Review for open-space valuation for the golf course which was denied. He successfully appealed to the PTAB, receiving "open space" classification and a reduced assessment which excluded the additional per-hole assessments on the golf course. Upon the complaint of the Board of Review for administrative review, the circuit court reversed the PTAB, and the PTAB and the taxpayer appealed.

On review, the Third Judicial District considered the appellants' contentions that the golf course was entitled to open-space classification under section 20g—1 and, further, that the taxable value of the land should be assessed as open-space property and not as a golf course with a separate assessment on each of the nine tees, greens and fairways. The court determined that the subject property fell within the plain language of the statute defining land used for open-space purposes. Further, based on the legislative history of section 20g—1 and the overall statutory scheme, the court determined that the act contemplated a single assessed value for open-space land and that improvements to such open space are not separately assessible. Accordingly, the court reversed the judgment of the circuit court and affirmed the decision of the PTAB assigning an assessed per-acre value of $122.80 to the golf course.

The Board of Review here attempts unsuccessfully to distinguish *Knox* on the basis the court "discussed little of the legislative history or policy behind Section 20g—1" and that it possibly improperly accorded *prima facie* validity to the PTAB's construction of the legislative intent of the statute as opposed to according such deference only to the PTAB's factual conclusions.

■ We believe that that *Knox* is dispositive of the instant cause in favor of the PTAB and the golf courses and is consistent with both the plain language of section 20g—1 and its legislative history.

As to the statute's plain language, section 20g—1 creates a single property classification: land "used for open space purposes." Property thusly classified is valued differently than on the basis of its fair-market value at its highest and best use. It is valued "at the price it would bring at a fair, voluntary sale for use by the buyer *for open space purposes.*" (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 120, par. 501g—1.) One type of land which qualifies for this special valuation is land which "conserves landscaped areas, *such as* public or private golf courses." (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 120, par. 501g—1.) The use of the words "such as" clearly implies the statute contemplates that there are uses of land other than golf courses which also serve the purpose of conserving landscaped areas. That these other uses may or may not also incidentally support some other economic use of the land is of no moment since its use for open-space purposes supercedes any such other use when its value under section 20g—1 is at issue.

It is well established that legislative intent first must be discerned from the language of the subject statute itself, and, if it is unambiguous and legislative intent can be deduced from the terms used, the court must give it effect (*Check Inn Lounge, Inc. v. Kozubowski* (1987), 164 Ill. App. 3d 1023) and resort to extrinsic aids such as legislative history is unnecessary (*County of Du Page v. Graham, Anderson, Probst & White, Inc.* (1985), 109 Ill. 2d 143; *Micro Switch Employees' Credit Union v. Collier* (1988), 175 Ill. App. 3d 828). Although the circuit court here found section 20g—1 susceptible of two interpretations and, thus, ambiguous, and considered the legislative history of the statute, a determination of the existence of an ambiguity generally is a question of law (see *Srivastava v. Russell's Barbecue, Inc.* (1988), 168 Ill. App. 3d 726), and this court is not bound by the circuit court's judgment on matters of law. (*Manella v. First National Bank & Trust Co.* (1988), 173 Ill. App. 3d 436.) We believe the statute in issue is not ambiguous and clearly expresses the legislative intent to afford a uniform valuation to all land actually used for one or more of the open-space purposes enumerated therein regardless of whatever other actual use or improvements the land supports.

We conclude the PTAB's valuation of the golf courses without regard to their actual use as golf courses was not contrary to the law.

■ We next consider the Board of Review's alternate argument, conceding that even if a uniform valuation of open-space lands was

the legislative intent of the statute, the $500-per-acre assessed valuation of the golf courses was erroneous because the PTAB considered only wetlands and marshes, the "least valuable" of the open-space uses. This argument belies the purported concession, however, because if open-space lands are to be assessed uniformly, there are no "least" or "most" valuable such lands. All are equally valuable as open space. Accordingly, the PTAB's valuation of golf courses based on such evidence was quite appropriate.

As noted by the PTAB, the evidence of valuation presented to it by the parties represented what is called the "market" approach to valuation, one of the three accepted methods of determining the value of property. (See *Lake County Board of Review v. Property Tax Appeal Board* (1988), 172 Ill. App. 3d 851.) Under the market approach, the prices actually paid, asked for, or offered for similar properties are compared, and a valuation of the subject property is deduced therefrom. As we have detailed, the golf courses presented the PTAB with evidence of the sales of a number of properties similar to the instant golf-course properties in that they were all lands used for open-space purposes. The PTAB found this evidence was more probative than that offered by the Board of Review, which included evidence of the sales of condemned, improved, developmental, residential and agricultural properties.

The circuit court here asked the PTAB to clarify its decision in the instant cause in light of its prior indication in the Glen Flora County Club case (No. 84—2329—C—1) that the best comparable sales evidence to use would be recent open-space purchases of properties "most similar to the subject, such as golf courses." In reviewing its decision in that case, the PTAB reaffirmed its decision in the instant cause that sales of improved golf courses were *not* proper comparables to be used to determine open-space valuation in light of the legislative history of the statute, and it admitted that its reasoning in the Glen Flora case "may have been flawed." Significantly, the PTAB also represented to the circuit court that its open-space valuations subsequent to the Glen Flora case were consistent with its valuation of the instant golf courses.

■ Finally, we agree with the PTAB that the Board of Review waived its argument that valuing the golf courses as open space without regard to the fact they are golf courses violates the uniformity clause of the Illinois Constitution (Ill. Const. 1970, art. IX, §4(a)) because it was not raised below. (*People ex rel. Hartigan v. Illinois Commerce Comm'n* (1987), 117 Ill. 2d 120, 131; *The Streams Club, Ltd. v. Thompson* (1989), 180 Ill. App. 3d 830, 836.) The principle of

uniformity of taxation requires equality in the burden of taxation. (*Kankakee County Board of Review v. Property Tax Appeal Board* (1989), 131 Ill. 2d 1, 20.) That is, taxation must be uniform as to the class upon which it operates. (*Du Page Bank & Trust Co. v. Property Tax Appeal Board* (1986), 151 Ill. App. 3d 624, 628.) The Board of Review's assertion that its argument "simply address[es] an issue which was of record below" is without merit. The record below shows only that the golf courses argued all land used for open spaces must be valued uniformly under section 20g—1 pursuant to that uniformity clause; the Board of Review did not challenge the statute on the basis it violates the clause.

Inasmuch as the value of the golf courses as land used for open-space purposes was determined by the PTAB in accordance with the law and was supported by the evidence submitted, the judgment of the circuit court of Lake County affirming that valuation was correct.

The judgment of the circuit court of Lake County on administrative review is affirmed.

Affirmed.

REINHARD and INGLIS, JJ., concur.