LaGRANGE BANK & TRUST COMPANY, a/k/a LaGrange State Bank, *et al.*, Plaintiffs-Appellees, v. RAMONA RODRIGUEZ *et al.*, Defendants-Appellants.

First District (1st Division)   No. 83—2835

Opinion filed October 21, 1985.—Rehearing denied November 26, 1985.

Legal Assistance Foundation, of Chicago (Alan Alop, Sandra Gartzman, and Joel D. Stein, of counsel), for appellants.

Burke & Burke, Ltd., of Chicago (Dennis J. Burke, of counsel), for appellee.

JUSTICE CAMPBELL delivered the opinion of the court:

This is an interlocutory appeal from a summary judgment granted to plaintiff, LaGrange Bank & Trust Co. (the bank), in a suit to recover an alleged deficiency balance due the bank from defendants, Jorge and Ramona Rodriguez, husband and wife, following the sale of defendants' repossessed vehicle. Cross motions for summary judgment were filed. The trial court granted the bank's summary judgment motion with respect to: (1) defendants' affirmative defense which alleged that the bank had violated the commercial reasonableness provisions of section 9—504(3) of the Uniform Commercial Code - Secured Transactions (the Code) (Ill. Rev. Stat. 1983, ch. 26, par. 9—504(3)); and (2) defendants' two-count counterclaim which sought damages for: (a) the bank's alleged violation of the Truth In Lending Act (15 U.S.C. sec. 1601 *et seq.* (1982)) and Regulation Z (12 C.F.R. sec. 226.1 *et seq.*) (count I); and (b) the bank's failure to comply with the default provisions of the Code (count II) (Ill. Rev. Stat. 1983, ch. 26, par. 9—501 *et*

*seq.*). The sole issue on appeal is whether genuine issues of fact exist so as to preclude the entry of summary judgment. For the reasons that follow, we find that such issues do exist and reverse the judgment of the trial court and remand the cause for further proceedings.

The record presents the following facts which are relevant to our decision. On June 10, 1977, defendants purchased a Dodge Xplorer Motor Home from Grange Dodge, Inc., who, in turn, assigned defendants' retail installment contract to the bank. At the time of purchase, defendants resided at 928 S. Leavitt, Chicago. In October 1979, defendants moved to 707 Waveland, Chicago. Subsequently, in early May 1980, defendants separated. Information in the record is conflicting as to whether Jorge Rodriguez continued to reside at the Waveland address or whether he merely used that address as a mail "drop off." However, it is undisputed that Ramona Rodriguez then moved to her mother's residence on Oakley in Chicago.

According to the deposition of Jerome Longbein, collection manager for the bank, collection efforts commenced on defendants' account as the result of delinquent payments as early as December 1978. During the ensuing year and a half, numerous telephone calls were made by the bank to defendants at the Waveland address and also to Jorge Rodriguez at his place of business. Finally, in mid-May 1980, the bank hired Equitable Services, Inc. (Equitable), a repossession-liquidation company, to repossess defendants' vehicle. On May 22, 1980, Equitable repossessed the vehicle at the Oakley address. There is conflicting evidence as to whether the bank gave Equitable the Oakley address or whether Equitable discovered the Oakley address through its own "skip tracing" techniques. On the day of repossession, the bank mailed a letter of redemption and letter of intent to each of defendants informing them that their vehicle would be sold at a public sale on June 12. The letters were sent by regular mail and certified mail to each defendant individually at the Oakley address. No letter was sent to the Waveland address. In his deposition, Longbein explained that Jorge's letter was sent to the Oakley address rather than to the Waveland address because the bank was under the impression that the Waveland address was merely a mail drop, and "[i]t would be much more logical that *** his notice, *** would be accepted at his wife's address than an address of strangers." The bank received signed certified mail receipts for the letters sent to each defendant. The signature on Jorge's receipt was definitely not his. The signature on Ramona's receipt was illegible. Both defendants denied ever having received notice of the public sale.

On June 10, 1980, two days before the scheduled private sale,

Equitable notified the bank of the three bids it had received for the vehicle. Equitable had not advertised the sale. Instead, three car dealers who regularly call or visit Equitable to bid on repossessed vehicles submitted the bids. The bank refused the bids on the ground that they were too low. There is conflicting evidence in the record as to whether the bank requested Equitable to acquire additional bids. In either case, Equitable did not.

On June 12, 1980, the day originally set for the public sale, Jorge Rodriguez and a friend visited the bank to make arrangements to refinance the loan and to recover the vehicle. Rodriguez paid the bank $500 on that date and stated that he and his friend would return in approximately one week with the balance of the money owed. The bank agreed to wait. At that time, Rodriguez also informed the bank that all correspondence to him should be directed to his place of employment on Wells Street in Chicago. When Rodriguez failed to make any subsequent payments, the bank sent him a letter, dated July 10, 1980, by regular mail to the Wells Street business address, informing him that unless payment in full was made by July 18, the bank would proceed to sell the vehicle. In his affidavit, Rodriguez denied ever having received this letter. A copy of the July 10 letter was never sent to Ramona Rodriguez because, according to Longbein, Ramona had told the bank on the date of repossession that she did not care what happened to the vehicle. In contradiction to Longbein's statement, Ramona stated in her affidavit that she had tried to arrange a revised payment schedule with the bank on the date of repossession, but was refused the opportunity.

On July 24, 1980, Jorge's friend informed the bank via telephone that Jorge's business address had changed. During that conversation, the bank referred to the July 10 letter sent to Jorge and advised Jorge's friend that payment must be made in full. The friend told the bank that Rodriguez had never received the July 10 letter, but that she would contact Rodriguez to see what he wanted to do. Later that day, the friend informed the bank that Rodriguez said to sell the vehicle. Thereafter, on August 7, 1980, the bank sold the vehicle to King Auto for $2,600. The bank had not advertised the sale. Instead, King Auto had contacted the bank in its normal course of business, asked if the bank had any vehicles available for resale, was told about the Rodriguez vehicle, and submitted its bid.

On October 30, 1980, the bank filed suit against defendants seeking a deficiency judgment in the amount of $3,044.45, which amount was subsequently amended to $4,870.90. Defendants' amended answer raised an affirmative defense under section 9—504(3) of the Code al-

leging that the bank's failure to provide proper notice to the defendants of the resale of the vehicle and its failure to dispose of the vehicle in a commercially reasonable manner barred any claim for deficiency. In addition, defendants filed a two-count counterclaim. Count I alleged violation of the Truth In Lending Act (15 U.S.C. sec. 1601 *et seq.* (1982)), and count II prayed for statutory damages under section 9—507 of the Code, predicated upon the improper conduct asserted in the affirmative defense. Thereafter, the parties filed cross motions for summary judgment. The trial court granted summary judgment in favor of the bank on both the affirmative defense and both counts of the counterclaim, and in entering its judgment, stated that there was no just reason to delay appeal. Defendants appealed the judgment of the trial court and filed a motion in the trial court to stay proceedings on the main cause of action pending resolution of the appeal. In support of its motion, defendants argued that in order for the bank to prevail on its amended complaint seeking a deficiency judgment, it must establish that it acted in a commercially reasonable manner. Because the appeal with respect to defendants' affirmative defense, as well as count II of the counterclaim, necessitates disposition of the identical issue, defendants asserted that the appeal divested the trial court of jurisdiction to conduct a trial on the amended complaint. The record indicates that the trial court continued the proceedings until June 6, 1984. However, there is no further information as to the status of the proceedings after that date.

On appeal, defendants contend that: (1) the bank violated sections 9—504(3) and 9—507 of the Code when it failed to give them proper notification of the public and private sales and when it failed to sell the vehicle in a commercially reasonable manner; and (2) the bank violated the Truth In Lending Act by failing to properly disclose its status as creditor on the retail installment contract. At the outset, we disagree with defendants' statement of the issues. The propriety of the trial court's order granting summary judgment is the subject of this appeal, not the substantive issues of the main cause of action and counterclaim. Thus, our focus is on the pleadings, dispositions, affidavits and exhibits which were before the trial court, and our sole inquiry is whether these documents present genuine issues of material fact which would preclude the entry of a summary judgment. *Coomer v. Chicago & North Western Transportation Co.* (1980), 91 Ill. App. 3d 17, 21, 414 N.E.2d 865.

■■ Underlying our determination as to whether summary judgment was proper is the well-established legal principle that the purpose of a summary judgment motion is not to try an issue of fact, but

to determine whether a genuine issue of material fact exists which would warrant a trial. (*McCarthy v. Johnson* (1983), 122 Ill. App. 3d 104, 107, 460 N.E.2d 762.) If what is contained in the pleadings and affidavits constituted all of the evidence before the court, and that evidence left nothing to go to the jury, summary judgment should be entered. (*Farmers Automobile Insurance Association v. Hamilton* (1975), 31 Ill. App. 3d 730, 732, 335 N.E.2d 178.) However, where a defense raises an issue of fact as to plaintiff's right to recover, a summary judgment must be denied. *Shirley v. Ellis Drier Co.* (1942), 379 Ill. 105, 110, 39 N.E.2d 329.

In the present case, defendants' affirmative defense raised the issue as to whether the bank had violated the commercial reasonableness provisions of section 9—504(3) of the Code, which states, in pertinent part, the following:

"Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. *** [E]very aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. *** [R]easonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor ***." (Ill. Rev. Stat. 1983, ch. 26, par. 9—504(3).)

In their affirmative defense, defendants asserted that the bank failed to provide them with reasonable notice of either the public or private sale of their vehicle. Jorge claimed that the bank erred in mailing his notice of the public sale to his wife's address rather than to his last known address on Waveland. As a result, he never received the notice. In response, the bank explained that it sent notice of the public sale via both regular and certified mail to each defendant at Ramona's Oakley Street address because, based upon information it had received through its collection efforts, Jorge's last known address was only a "mail drop." Thus, the bank concluded that Jorge would be more likely to actually receive mail addressed to him if it were directed to his wife's address. Because Illinois law does not require the creditor to prove actual receipt of the notice by the debtor (*Tauber v. Johnson* (1972), 8 Ill. App. 3d 789, 793, 291 N.E.2d 180), there is no issue of fact as to whether Jorge actually received the notice. However, it is clear from the record, that a question of fact does exist as to whether it was reasonable for the bank to send notice to Jorge at his wife's address rather than to Jorge's last known address.

Similarly, with respect to the subsequent private sale, a question

of fact exists as to whether it was reasonable under the Code for the bank to notify Jorge, but not Ramona, that a private sale would take place after July 18. Pursuant to *Staley Employee Credit Union v. Christie* (1982), 111 Ill. App. 3d 165, 443 N.E.2d 731, if a repossessed vehicle is not sold at the public sale for which notice had been sent, additional notice must be sent to the debtor with respect to any subsequent public or private sales. Thus, when defendants' vehicle was not sold at the June 12 private sale, it was incumbent upon the bank to notify defendants of the date after which a private sale would be held. The bank admitted that it failed to notify Ramona of the private sale, but denied that its failure to do so was unreasonable. The bank argues that its decision was based on its telephone conversation with Ramona on the date of repossession, during which she stated that she did not care what the bank did with the vehicle. Ramona, however, claimed that she expressed interest in redeeming the vehicle on the date of repossession.

Regarding notice to Jorge about the private sale, the record indicates that the bank sent a letter via regular mail to Jorge's last known business address on July 10. The letter stated that full payment must be received by July 18, or the vehicle would be sold. Jorge denied having received this letter. As discussed, proof of receipt of the notice by the debtor is unnecessary. However, there remains a question of fact as to whether it was reasonable for the bank not to send a follow-up notice to Jorge's new business address once it learned from Jorge's friend that Jorge had not received the July 10 letter and that his business address had changed.

Based upon our review of the record, we conclude that genuine issues of material fact exist as to the reasonableness of the bank's notification procedures which preclude the entry of summary judgment on defendants' affirmative defense and necessitate reversal and remand for a trial on the merits. Our decision to remand obviates the need to discuss the additional component to defendants' affirmative defense regarding the commercial reasonableness of the bank's disposition of the vehicle. As a caveat, we note that we are not passing upon whether the facts at issue are sufficient to establish an affirmative defense, but hold only that the matters raised could not properly be disposed on a motion for summary judgment. Further, because count II of defendants' counterclaim seeks statutory damages predicated upon the substantive issues raised in the affirmative defense, our determination to reverse and remand the judgment as to the latter mandates the same decision with respect to count II.

■ Regarding count I of defendants' counterclaim, which alleged

that the bank violated provisions of the Federal Truth In Lending Act when it failed to adequately disclose to defendants its status as creditor on the retail installment contract, we also find that genuine issues of material fact exist which render entry of summary judgment improper. The retail installment contract set forth the bank's name and address in the upper left corner of the front side and designated defendants as "Buyers" and Grange Dodge, Inc., as "Seller." There was no designation of the bank's status as either creditor or assignee. Although a provision on the reverse side of the contract authorized assignment by the Seller, the assignment portion of the contract was blank. Defendants claimed that the contract's failure to identify the bank as "creditor" or "assignee" violated the Truth In Lending Act's requirements of "meaningful disclosure."

In response, the bank relied on *Ford Motor Credit Co. v. Cenance* (1981), 452 U.S. 155, 68 L. Ed. 2d 744, 101 S. Ct. 2239, which held that notification of assignment on a retail installment contract was sufficient disclosure of creditor status. The bank claimed that its name and address at the top of the retail installment contract was sufficient notification to defendants of the bank's creditor status and that failure to provide more did not defeat the purposes of the Truth In Lending Act to provide meaningful disclosure of credit terms and to avoid fraudulent practices and uninformed use of credit.

In our opinion, the law relating to adequate disclosure of creditor status on retail installment contracts as applied to the facts at bar is not so conclusive as to eliminate all genuine issues as to material fact. Therefore, we conclude that whether the bank's status as creditor was sufficiently disclosed in our particular situation is a question of fact not susceptible to summary judgment.

Based upon the aforementioned, the judgment of the circuit court is reversed and the cause remanded for further proceedings.

Reversed and remanded.

BUCKLEY, P.J., and O'CONNOR, J., concur.