FORD MOTOR CREDIT COMPANY, Plaintiff-Appellee, v. BETSY NEISER, Defendant-Appellant.

First District (3rd Division) No. 1—88—1606

Opinion filed March 28, 1990.

516

Lindner, Seers & Reuland, P.C., of Chicago (Nancy M. Rundin, of counsel), for appellant.

DeHaan & Richter, P.C., of Chicago (David L. Hazan, of counsel), for appellee.

JUSTICE FREEMAN delivered the opinion of the court:

Defendant, Betsy Neiser, appeals from the trial court's order entering summary judgment (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005) in favor of plaintiff, Ford Motor Credit Company (FMCC). On appeal, defendant contends that there were genuine issues of material fact which precluded the trial court from entering the judgment in FMCC's favor.

On April 29, 1985, defendant entered into a motor vehicle retail installment contract for the purchase of a 1985 Ford Escort. (Ill. Rev. Stat. 1985, ch. 121½, par. 561 *et seq.*) Under the terms of the contract, defendant was to pay the purchase price of the car in 60 monthly installments of $194.51, commencing on May 29, 1985, and continuing thereafter on the 26th day of each month. The contract contained the following provisions:

> "D. Vehicle Insurance: You must insure yourself and Creditor against loss or damage to the vehicle. The type and amount of insurance must be approved by the creditor. The creditor may buy the insurance if you do not but he does not have to do so.

If the Creditor buys the insurance, he may insure only himself or both you and himself. In either case, you must pay back to the Creditor what he pays for the insurance plus interest at the highest rate allowed by law."

Additionally, the contract provided that failure of the debtor to make any payment when due rendered the debtor in default, giving the creditor the right to repossess the vehicle.

In February 1986, defendant moved to Massachusetts. In July 1986, she and her father, Fred Neiser (Neiser), entered into a voluntary lease agreement for the car. According to defendant, Neiser agreed and continued to make the payments on the car from July 1986 through January 1987. Neiser brought the car from Massachusetts back to Illinois.

On or about April 23, 1986, FMCC received notification from defendant's car insurer that her insurance coverage was terminated. According to FMCC, it subsequently purchased single interest insurance on the vehicle and notified defendant of the resulting increase in her monthly payments.

On March 4, 1987, FMCC repossessed defendant's car. Defendant submitted an "Affidavit of Defense," and FMCC sought a declaration from the court that it was entitled to possession. In its fourth amended complaint, FMCC alleged that defendant was in default under the terms of the retail installment contract for her failure to make required payments.

In her affidavit in opposition to FMCC's motion for summary judgment, defendant asserted that in the summer of 1986 she began to receive notices from FMCC that she was behind in her payments; however, whenever she contacted FMCC, she was told that there was no problem and that she was current in her payments. In September 1986, defendant received a telephone call from Art Felix, a customer services representative at FMCC. Felix told her that she was behind in her payments.

Defendant denied that FMCC ever gave her notice of the amount of her unpaid payments or that her payments were deficient. Further, she stated that she did not learn of a problem with insurance coverage until January 1987, when, by that time, the car was insured. Additionally, defendant stated that she never received a certificate or policy for the insurance which FMCC had allegedly purchased.

Fred Neiser also submitted an affidavit. He corroborated defendant's statement concerning the voluntary lease agreement. In December 1986, Neiser applied for insurance coverage on the car and sent

a copy of that application, which he claims was proof of binding insurance, to FMCC. Neiser further stated that, until he saw a copy of a letter from FMCC to defendant in February 1987, he was unaware of any money due to FMCC for its purchase of insurance coverage.

At the hearing on FMCC's motion for summary judgment, defendant admitted that she had failed to secure the requisite insurance for a period of several months. The trial court found that defendant's failure to make the increased payment, which resulted from FMCC's purchase of the insurance, constituted a breach of the contract, which entitled FMCC to possession. We affirm.

As a preliminary matter, FMCC, asserts that the second supplemental record on appeal was filed without notice to them and that depositions contained therein were not filed with the clerk of the court. Further, FMCC claims that defendant made no effort to comply with the requirements of the supreme court rules for the signing or filing of the depositions. Therefore, FMCC maintains that the depositions were not part of the record below and cannot be considered for purposes of this appeal. Defendant disputes this claim.

■ First, regarding the supplemental record, defendant motioned this court and was granted leave to file the supplemental record. Notice of the order was mailed to FMCC's attorneys July 10, 1989. Second, Supreme Court Rule 207 prescribes the procedure for signing and filing depositions. (107 Ill. 2d R. 207.) The deposition must either be signed by the deponent or contain a waiver of signature. Further, the deposition must be certified, sealed and filed with the clerk of the court. Absent an attempt to comply with the rules, the deposition is informal and insufficient. *Urban v. Village of Inverness* (1988), 176 Ill. App. 3d 1, 6, 530 N.E.2d 976.

■ Our review of the record reveals that a notice of filing of the depositions of Kathy Haskins, Art Felix, Steve Neil, and Gina Ginocchio, dated April 12, 1988, is included therein. With the exception of Ginocchio's deposition, the others either contain a waiver of signature or a statement that the signature has been reserved by agreement of the parties. FMCC has not alleged prejudice, nor was any shown as a result of the absence of Ginocchio's signature. More importantly, FMCC does not allege that the deposition inaccurately reported the deponent's responses. Other than the missing signature or statement of waiver, FMCC does not argue that the deposition was, in any way, defective. Thus, any error by the trial court in its consideration of the deposition was harmless, and we will not exclude any necessary consideration of it for purposes of our review. See *Cowan v. Wheeler* (1979), 76 Ill. App. 3d 259, 264, 395 N.E.2d 32.

■■ ■ Summary judgment is properly granted only where the pleadings, exhibits, depositions, admissions and affidavits on file show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005; *Farmers Automobile Insurance Association v. Hamilton* (1975), 31 Ill. App. 3d 730, 732, 335 N.E.2d 178, *aff'd* (1976), 64 Ill. 2d 138, 355 N.E.2d 1.) It is a drastic measure and should therefore be granted only when the right of the moving party is clear and free from doubt. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240, 489 N.E.2d 867.) In determining whether a trial court properly granted summary judgment, a court of review must consider all grounds urged and facts revealed in the record to determine if a genuine issue of material fact exists and, if none does, whether the moving party was entitled to summary judgment as a matter of law. (*Schwaner v. Belvidere Medical Building Partnership* (1987), 155 Ill. App. 3d 976, 983, 508 N.E.2d 522.) Where the reviewing court determines that there is a genuine issue of material fact, an order entering summary judgment will be reversed. *Bellmer v. Charter Security Life Insurance Co.* (1986), 140 Ill. App. 3d 752, 754, 488 N.E.2d 1338.

Defendant's first contention on appeal is that FMCC was not entitled to possession of the car because it violated provisions in the Motor Vehicle Retail Installment Sales Act (MVRISA) (Ill. Rev. Stat. 1985, ch. 121½, par. 561 *et seq.*). Specifically, defendant argues that MVRISA provides that upon the buyer's written request, the holder of a retail installment contract must give the buyer a written statement of the amounts of payments and the total unpaid under the contract. (Ill. Rev. Stat. 1985, ch. 121½, par. 575.) Neiser made several requests to FMCC for an accounting; however, none was provided to either him or to defendant. Thus, defendant argues, FMCC's noncompliance with the statutory provisions was a violation of public policy which negated its entitlement to possession of the car.

■■ Defendant's argument is not persuasive. While we agree that FMCC was obligated to provide such a statement upon a request from defendant, we find no provision in the statute which would obligate it to provide a statement to Neiser, who was not a party to the contract. Further, even if Neiser were entitled to the statements, there is no provision in the statute which would deny FMCC its remedy of repossession of the car for such a violation. The statute is clear. A violation of its provisions will result in the denial of any recovery of any finance charge, any delinquency or collection charge or refinance charge in connection with the retail installment contract.

Ill. Rev. Stat. 1985, ch. 121½, par. 584.

In *Anco Investment Corp. v. Spencer* (1971), 1 Ill. App. 3d 445, 275 N.E.2d 263, *aff'd* (1973), 53 Ill. 2d 396, 292 N.E.2d 726, plaintiff violated certain portions of the Retail Installment Sales Act in that his retail installment contract did not comply with certain provisions required by the Act. The issue presented on appeal was whether the contract was totally unenforceable or was merely subject to the penalties established under the Act. The court held that the plaintiff's failure to comply with the requirements under the Act did not render the contract unenforceable. The exclusive remedy for the noncompliance was the imposition of the statutory penalties. Likewise, in this case, the only remedies for a violation of the statute are those set out therein; FMCC's alleged noncompliance does not deprive it of its remedy of repossession.

In her reply brief and at oral argument, defendant argued that even if FMCC's right to repossess could not be denied due to its violations of MVRISA, such a penalty could be imposed under the Consumer Fraud and Deceptive Business Practices Act (the Act) (Ill. Rev. Stat. 1987, ch. 121½, par. 261 *et seq.*). She argues that the Act and MVRISA are *in pari materia* and should be construed together.

Pursuant to the Act, three or more violations of MVRISA may constitute a violation of the Act. (Ill. Rev. Stat. 1985, ch. 121½, par. 262E.) At oral argument, defendant stated that FMCC had committed more than three violations of the Act and it should, therefore, not be permitted its remedy of repossession. The violations to which defendant refers are FMCC's failure to accept proof of insurance and its failure to comply with requests from Neiser for statements of the account.

Contrary to defendant's statement at oral argument, we find no indication, from the record, that a violation of the Act was either alleged in the pleadings or otherwise presented to the trial court. While it is true that defendant raised below the issues of nonacceptance of proof of insurance and the failure to provide a statement of account, she never once complained that this conduct violated the Act. Her sole argument below was that FMCC had violated MVRISA. The alleged violation of the Act appears to have been an afterthought, raised for the first time in her reply brief. The mere fact that the two statutes here may be construed *in pari materia* does not negate the necessity of proper pleading. Defendant cannot be heard to complain that the trial court failed to consider an issue which was never before it.

■ We necessarily conclude that issues not raised in the trial

court are waived for purposes of appellate review, even in appeal from summary judgment. (*R.J.N. Corp. v. Connelly Food Products, Inc.* (1988), 175 Ill. App. 3d 655, 529 N.E.2d 1184.) Moreover, issues not raised in the initial brief cannot be raised in the reply brief. (107 Ill. 2d R. 341(e); *In re Liquidations of Reserve Insurance Co.* (1988), 122 Ill. 2d 555, 524 N.E.2d 538.) Defendant was not precluded from properly presenting this issue below. Having failed to do so, we decline to consider it.

Defendant's second contention on appeal is that FMCC was not entitled to summary judgment because there were questions of fact which existed as to its right to possession of the car. She asserts several arguments in support thereof.

Defendant first argues that there was à question of fact as to the number of payments made under the terms of the contract. The record reveals that, at the hearing, the trial court noted that a breach of the contract could result either from nonpayment or from the failure to maintain insurance coverage. The court agreed with defendant that while a question of fact existed concerning the number of payments which she had made under the terms of the original contract, there was no question that defendant had not secured the requisite insurance.

Defendant next argues that a question of fact existed as to whether FMCC actually purchased insurance. As a threshold argument, she asserts that the affidavits of Kathy Haskins, presented to prove the purchase, were not competent evidence. Since Haskins worked in the customer service department of FMCC, and not in the insurance department, she had no personal knowledge of the claimed insurance purchase and therefore could not testify to that fact. We disagree.

■ There is a modern trend to be more liberal in deciding the admissibility of business records. This trend is necessitated by the fact that businesses have become more complicated and transactions have been broken down into various operations so that no particular person can identify any particular operation. (*Agrico Chemical Corp. v. Forreston Fertilizer Co.* (1975), 32 Ill. App. 3d 986, 989-90, 337 N.E.2d 76.) In *Atlee Electric Co. v. Johnson Construction Co.* (1973), 14 Ill. App. 3d 716, 303 N.E.2d 192, the court allowed records to be introduced even though they were typed by one department from material developed in another department and no specific witness could identify the entries as being connected with the particular transaction in question, from his personal knowledge. The records were admitted as falling within the limits of Rule 236, since they

were made in the regular course of business according to the established practice of the business. *Atlee*, 14 Ill. App. 3d at 723.

According to testimony in Haskins' deposition, she was then employed by FMCC as a dealer account representative. Previously, she had held the positions of customer service supervisor and customer service representative. During the time that she was a customer service supervisor, she became familiar with defendant's account. Haskins stated that the records of defendant's account were kept in the ordinary course of business by FMCC. She further testified that: (1) FMCC placed insurance on defendant's vehicle, resulting in an increased monthly payment amount; (2) notice of the increase was sent to defendant; and (3) defendant was in default as a result of her failure to pay the increased amount.

We agree with the reasoning in *Atlee*. Even though Haskins did not work in the insurance department, she had been a long-time employee of FMCC with knowledge of its operating procedures. We believe that she could properly testify concerning facts contained in FMCC's business records, which included information concerning its purchase of insurance.

■ Having determined that Haskins could testify concerning FMCC's business records, we next address defendant's argument that the fact that FMCC's file contained an insurance policy from the insurance company was not sufficient evidence of its purchase. Defendant correctly argues that evidence which is not admissible at trial is inadmissible in a ruling on a motion for summary judgment. She maintains, relying on *Pell v. Victor J. Andrew High School* (1984), 123 Ill. App. 3d 423, 462 N.E.2d 858, that because the insurance policy was prepared by another company, it was inadmissible as a FMCC business record.

In *Pell*, a products liability case, the trial court determined that a letter concerning the safety rules of the product, which was maintained in the defendant's files, had actually been generated by the manufacturer of the product. The court stated that as to the manufacturer, the letter was a business record. However, as to the defendant, the letter was inadmissible hearsay. The court held that merely because a document is retained in the files of a business does not qualify it as a business record if it was not generated by the business. 123 Ill. App. 3d at 434.

*Pell* is of no assistance to defendant. By her argument, she suggests that since the policy did not qualify as a FMCC business record, it could not then qualify as proof of purchase of insurance. Generally, proof of payment is made by the possession and presentation

of a receipt. (See *Mendelson v. Flaxman* (1975), 32 Ill. App. 3d 644, 648, 336 N.E.2d 316; *Connelly v. Sullivan* (1905), 119 Ill. App. 469.) Receipts are not generated by purchasers, but by sellers. While, under *Pell*, a purchaser's offer of his receipt into evidence would not be admissible as the purchaser's business record, it does not follow that it would be excluded as competent evidence to prove payment.

■ At the hearing on the motion, defendant argued that FMCC failed to present a check or other competent evidence to prove payment. While the cancelled check might possibly have provided proof of payment, it was not the only manner by which payment could be proved. Payment may be proved by circumstantial evidence or by proof of facts and circumstances from which the inference of payment may be drawn. 70 C.J.S. *Payment* §89 (1987).

Here, FMCC presented several exhibits along with the affidavit of Haskins. One document was the insurance policy, No. PLM 14 64 35 (referred to by defendant as the notice of coverage), issued by American Security Insurance. On the face of the policy were the names of the debtor and creditor, the period of coverage of insurance (April 23, 1986 to April 29, 1990), the date the insurance was placed (July 3, 1986), and the premium amount.

Another document presented was a copy of a draft from American Security to FMCC evidencing a refund of $1,500.

According to Haskins, once defendant insured her car, American Security refunded to FMCC the unearned premium amount. Defendant was named on the refund draft as the debtor.

■ We believe that the insurance policy, issued by American Security, along with Haskins' testimony that FMCC purchased the insurance, was competent evidence to prove FMCC's purchase of insurance. This evidence was bolstered by the presentation of a copy of the refund check. American Security's issuance of an insurance policy and its subsequent refund to FMCC of the unearned premium amount would be acts inconsistent with the existence of FMCC's indebtedness to them for insurance coverage. We conclude that the court had before it sufficient evidence of FMCC's purchase. Compare *Saunders v. Wilson* (1969), 114 Ill. App. 2d 380, 253 N.E.2d 89 (plaintiff's offer of unreceipted repair bill and his uncontroverted testimony under oath that bill was paid were sufficient for admission of bill into evidence as proof of damages to be reimbursed to plaintiff by defendant).

Defendant next argues that a question of fact existed as to FMCC's claim that she failed to provide it with proof of insurance coverage. Fred Neiser provided FMCC with an application of insur-

ance on December 12, 1986. According to defendant, the application was proof of binding insurance coverage. She argues that since proof of coverage was given to FMCC prior to the date of repossession and since the coverage was in force on the date of repossession, FMCC was not entitled to repossess the car.

Defendant cannot prevail on this argument. There is no question that from April 1986 until December 1986, defendant provided no insurance on the car. The result was the additional cost chargeable to her for insurance purchased by FMCC. The fact that she, or her father, secured insurance in December, and subsequently provided proof to FMCC, did not remedy the problem of the accrued debt for the insurance coverage paid for by FMCC.

Defendant also raises notice of the increased payments as an issue. She argues that she never received a coupon book notifying her of an increased payment amount. A letter from FMCC, dated July 15, 1986, and addressed to defendant, stated that as a result of defendant's failure to provide FMCC with evidence of required insurance, the premium amount and finance charges for FMCC's purchase thereof had been added to her account and that, accordingly, her monthly payment amount had been increased. The letter stated the increased monthly payment amount, that a new coupon book, reflecting the new monthly payment amount, would be sent to defendant, and that the new payments were to begin effective August 29, 1986.

According to Haskins, once FMCC purchases insurance, a notation is made on a computerized statement, and within one to two weeks of notice to the customer of a change in payment, a new coupon book is automatically issued. Coupon books are issued for the convenience of the customer and serve as a means by which FMCC may properly account for payments made. Defendant does not deny that she received the notice of the payment change; she argues only that she never received a new coupon book.

Since defendant did not deny receipt of the letter, there was no issue of fact concerning her receipt of notice of the increased payment. Nonreceipt of the new coupon book did not excuse payment. Had FMCC relied on the coupon book as the means by which it notified its customers of a change in payment, then another result would be warranted.

Further, there is no indication in the record that defendant notified FMCC that she did not receive the new coupon book. Absent notice from her, FMCC would have no way of knowing that she did not receive it. Since defendant knew that she was to receive a new book, it would have been reasonable for her to notify FMCC when, after a

period of time, she had not yet received it.

Defendant next argues that a question of fact existed as to whether FMCC was adequately disclosed as the creditor. By her argument, defendant asserts that FMCC violated provisions in the Truth in Lending Act (15 U.S.C. §1601 *et seq.* (1988)). She points to the facts that (1) her copy of the contract did not contain the signature of the seller; (2) the assignment section was without a signature; and (3) contrary to the statement on the face of the contract which indicated that the assignment provisions were on the reverse side, no such provisions appeared on her contract.

In *LaGrange Bank & Trust Co. v. Rodriguez* (1985), 137 Ill. App. 3d 1009, 485 N.E.2d 394, a case upon which defendant relies, the defendants alleged that the plaintiff bank had violated the Federal Truth in Lending Act (15 U.S.C. §1601 *et seq.* (1988)) because it failed to adequately disclose to them its status as creditor on the retail installment contract. The contract set forth the bank's name and address in the upper left corner of the front side of the contract and designated defendants as "Buyers" and LaGrange Dodge, Inc., as "Seller." There was no designation of the bank's status as either creditor or assignee. Although a provision on the reverse side of the contract authorized assignment by the "Seller," the assignment portion of the contract was blank. (137 Ill. App. 3d at 1016.) On appeal from a grant of summary judgment for the bank, the court stated that the deficiencies on the contract did not eliminate all genuine issues as to material facts. The court concluded that whether the bank's status as a creditor was sufficiently disclosed was a question of fact not susceptible to summary judgment. 137 Ill. App. 3d at 1016.

*LaGrange* is inapposite. Here, FMCC is clearly disclosed on the face of the contract as the assignee. The retail installment contract, signed by defendant, stated on the face of the contract that the seller assigns the contract to Ford Motor Credit Company under the assignment on the back of the contract. Furthermore, in *Ford Motor Credit Co. v. Cenance* (1981), 452 U.S. 155, 68 L. Ed. 2d 744, 101 S. Ct. 2239, the Supreme Court held that the legend which appeared on the retail installment contract which stated, "[t]he foregoing contract hereby is accepted by the Seller and assigned to Ford Motor Credit Company in accordance with the terms of the Assignment set forth on the reverse side hereof," was sufficient notification of Ford Motor Credit Company's creditor status. Here, defendant's claim that her copy of the contract did not contain the terms of the assignment on the reverse side does not negate notice of the assign-

ment and identification of FMCC as the creditor.

Additionally, our review of that portion of the contract which provided an explanation of the terms of the assignment reveals that no signature was required. Also, Packey Webb Ford is designated as the seller; however, no handwritten signature of its agent appears on defendant's copy of the contract. Despite this omission, we find no question of fact existed as to the adequacy of disclosure of FMCC as the creditor. Further, we note that the contract contains, in bold black lettering above the space provided for defendant's signature, that the buyer acknowledges receipt of a true and completely filled in copy of the contract at the time of signing. By her signature, defendant acknowledged that her copy of the contract was complete.

Defendant urges three other arguments in support of her contention that FMCC was not entitled to summary judgment. She argues that questions of fact existed as to (1) FMCC's contention that a reason for the repossession was that she was not in possession of the car; (2) FMCC's true motives for repossessing the car; and (3) that the existence of a question of fact as to the reasons for the repossession was evident from FMCC's pleadings.

It is undisputed that defendant's failure to provide the requisite insurance and to pay FMCC for the purchase thereof constituted a breach of the retail installment contract. It is also undisputed that a breach of the contract entitled FMCC to repossession of the car. Having determined that such a breach did in fact occur, we deem it unnecessary to address defendant's additional arguments.

For the foregoing reasons, we affirm the entry of summary judgment in favor of FMCC.

Affirmed.

RIZZI and WHITE, JJ., concur.